IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-00255-D

| | | |
|---|---|---|
| BRUCE R. MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant, Bruce R. Marshall, seeks judicial review of the Commissioner's denial of his application for Social Security Disability Insurance Benefits ("DIB"). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's motion for judgment on the pleadings [DE-34] be denied and that the Commissioner's motion for judgment on the pleadings [DE-40] be granted.

## STATEMENT OF THE CASE

Claimant protectively filed an initial application for DIB on November 27, 2006. (R. 12, 87-93.) He alleged disability beginning January 1, 2003 due to degenerative joint disease in both hips. (R. 113.) This application was denied initially (R. 38-41) and upon reconsideration (R. 48-56). Claimant then requested a hearing before an Administrative Law Judge ("ALJ") (R. 58), which took place on May 5, 2009 (R. 20-35, 339-75). On June 9, 2009, the ALJ issued a decision denying

Claimant's application in its entirety. (R. 9-19.) The Appeals Council ("the Council") denied

Claimant's request for review on May 28, 2010 (R. 1-3), which rendered the ALJ's decision a "final

decision" for purposes of judicial review. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002)

(noting that when the Council denies a request for review, the underlying decision by the ALJ

becomes the agency's final decision for purposes of appeal). Claimant then commenced this action

pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.     Standard of review

The scope of judicial review of a final decision regarding DIB under the Social Security Act

is limited to determining whether substantial evidence supports the Commissioner's factual findings

and whether the decision was reached through the application of the correct legal standards. *Walls*,

296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind

would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640,

642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute

its judgment for that of the Commissioner. *Walls*, 296 F.3d at 290. Rather, when conflicting

evidence is presented, it is up to the ALJ to resolve those inconsistencies and not the responsibility

of the Court to determine the weight of the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990). Therefore, in determining whether substantial evidence supports the Commissioner's

decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and

whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence.

*See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## II.     The Social Security framework

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a DIB case. 20 C.F.R. § 404.1520. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the Commissioner must determine whether the claimant has a severe impairment or combination of impairments which significantly limit his or her ability to perform basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the Commissioner determines whether the claimant's impairment meets or medically equals the requirements of one of the Listings of Impairments ("Listings"), as listed in 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled *per se*. If the impairment does not meet or equal a Listing, at step four the claimant's Residual Functional Capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment. If so, the claim is denied. If the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work.

## III.    The ALJ's findings

Here, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520. First, at step one, the ALJ found that Claimant had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2003 through his date last insured of December 31, 2004. (R. 14.) Next, at step two, the ALJ found that, prior to his date last insured, Claimant had suffered from the severe impairment of osteoarthritis of both hips. *Id.*

3

However, at step three the ALJ determined that Claimant had not had an impairment or combination

of impairments that met or medically equaled a Listing. (R. 14-15.) Instead, at step four, the ALJ

determined that Claimant had retained the RFC to perform light work with limitations, though the

ALJ did find that Claimant had been unable to perform past relevant work. (R. 15-17.) Finally, at

step five, the ALJ determined that there are jobs that exist in significant numbers in the national

economy that Claimant could have performed. (R. 18-19.) As a result, the ALJ found that Claimant

was not disabled. (R. 19.)

## IV.     The May 5, 2009 administrative hearing

### A.     Claimant's testimony at the administrative hearing

Claimant testified to the following at the May 5, 2009 administrative hearing held in

conjunction with his application for DIB. (R. 343-59.) At the time of the hearing, he was 55 years

old and living in Raleigh, North Carolina with his 12-year-old son. (R. 343.) He had a GED, was

not currently working, and was receiving a Supplemental Security Income ("SSI") payment of $674

per month, food stamps, and Work First funds. (R. 344-45.) In the past, Claimant had worked as

a delivery driver, but had stopped working in 2002 because he was having hip pain and trouble

walking. (R. 345-46.) However, at the time that he stopped working, Claimant did not seek

treatment for his hip pain, and instead relied on over-the-counter medication. (R. 349.)

In May of 2003, Claimant was arrested on New Jersey state charges and detained pending

trial. (R. 347-48.) He ultimately pled guilty sometime in 2004 and remained incarcerated in the

New Jersey Department of Corrections ("the NJDOC") until 2006. (R. 348-49.) In October of 2004,

while in the NJDOC, Claimant first sought treatment for his hip pain, as well as back pain, and an

x-ray was performed.[1]  (R. 350-51, 354.)  Claimant testified that, as a result, he was prescribed

Motrin, restricted to a bottom bunk, and relieved from work detail.  (R. 351, 354-55.)  No further

action was taken at that time, and Claimant testified that the NJDOC had told him "that's all they

could do at that point, was give me the pain–stuff for pain."  (R. 355.)  Later, Claimant was given

a cane, and he was still using a cane at the time of the hearing.  (R. 354, 373.)  Claimant testified at

the hearing that the pain was there "all the time" and that the Motrin did not help much.  (R. 357.)

However, he also testified that he was able to sit through meals, walk back and forth from his cell

to the day room, and alternate between sitting and standing.  (R. 358.)

Claimant was released from the NJDOC in November of 2006.  (R. 356.)  After originally

filing the instant application for DIB in November of 2006, Claimant was sent to see Dr. Gonzalo

Fernandez in December of 2006 and January of 2007 for the same type of hip pain, at which time

further x-rays were taken.  *Id.*

### B.    Vocational expert's testimony at the administrative hearing

Kimberly Engler, a vocational expert ("VE"), also testified at the administrative hearing.  (R.

360-74.)  Ms. Engler was present for Claimant's testimony as to his past work.  (R. 360.)  Ms. Engler

stated that Claimant had performed past work as a delivery driver, DOT code 905.663-014, which

would qualify as medium, semiskilled work with an SVP of 4.  *Id.*  Ms. Engler stated that this work

would require driving and operating skills, which would "transfer to other driving and operating type

jobs."  *Id.*  The ALJ then posed the following hypothetical to Ms. Engler:

---

[1]In conjunction with this testimony, Claimant's attorney acknowledged that there was no
medical basis to find that Claimant was disabled prior to his treatment and x-ray in the NJDOC in
October of 2004, despite the alleged onset date of January 1, 2003. (R. 350.)

> [F]or the time period prior to the date last insured of 12/31/04[,] [i]f I find the claimant's residual functional capacity was such that he had the maximum sustained exertional work capability to perform light work as defined in the regulations; and furthermore, I'd ask you to assume that he did have a sit/stand option, that that job would require – any jobs would require a sit/stand option. With those restrictions in mind, do you have an opinion as to whether or not there were, there were any job [sic] which exists in significant numbers in the region which you believe he was vocationally qualified to perform, based on his age, education, training, and background?

(R. 362.) Ms. Engler responded that such a person could perform light jobs such as (1) cashier II, DOT code 211.462-010; (2) small products assembler II, DOT code 739.687-030; (3) small products assembler I, DOT code 706.684-022; and (4) office helper, DOT code 239.567-010. (R. 362-63.) Ms. Engler indicated that these four potential jobs were being performed by 250,000, 50,000, 150,000 and 150,000 people nationally, respectively, and 3,000, 1,000, 2,000, and 2,000 people in North Carolina, respectively. *Id.* Ms. Engler also indicated that the cashier job and the assembly jobs would allow for "essentially" an at will sit/stand option, while the office helper position would require one to be seated for approximately 20 minutes at a time before being able to stand and walk and then continue sitting. (R. 363.) Ms. Engler testified that she believed positions existed that could accommodate Claimant based on "placing individuals into these jobs and conferring with other experts." (R. 368.) In response to questioning by Claimant's attorney, Ms. Engler testified that Claimant's use of a cane would preclude the assembly jobs and might affect the cashier job, depending on "which hand the cane was required in," as well as preclude the office helper job, if Claimant "need[ed] the cane to walk." (R. 373-74.)

V.     **Claimant's arguments on appeal**

On appeal, Claimant makes five arguments: (1) that the ALJ erred by failing to find that he met or equaled Listing 1.02; (2) that the ALJ erred by failing to include in his RFC the fact that he

requires frequent breaks, regardless of whether his job entails sitting or standing and walking; (3) that the ALJ erred in finding that the jobs for which he had an RFC exist in significant numbers in the national economy; (4) that the ALJ erred in finding that he has the RFC for light work; and (5) that the ALJ erred in rejecting his pain testimony. The Court will address each of these arguments in turn.

**A.** **Claimant's argument that the ALJ erred by failing to find that he met or equaled Listing 1.02.**

First, Claimant argues that the ALJ erred by failing to find that he met or equaled Listing 1.02. Specifically, Claimant contends that the ALJ "did not really address" whether Claimant met or equaled the Listing and should have discussed it more thoroughly. To that end, Claimant contends that the ALJ incorrectly believed that using an assistive device was a necessary condition of meeting Listing 1.02, and therefore erred by finding that Claimant could not meet the Listing exclusively because he did not use an assistive device prior to his date last insured. In addition, Claimant contends that the ALJ erred by failing to "seriously discuss" whether Claimant's pain, taken in combination with other factors, would equal Listing 1.02 and that the ALJ erred by failing to consider Dr. Fernandez' opinion that he could stand and walk for at most four hours with frequent breaks.

In response, the Commissioner argues that Claimant has mischaracterized the ALJ's position and that, in fact, the ALJ clearly did *not* believe that using an assistive device was a necessary condition of meeting Listing 1.02. To the contrary, the Commissioner argues that the ALJ accurately stated the law and correctly applied it to the facts of Claimant's case, considering his non-use of an assistive device as merely one factor in assessing how Claimant's ability to ambulate affected his

general daily activities.  In addition, the Commissioner points out that the ALJ credited Dr. Fernandez' opinion in finding that Claimant's pain did not affect his ability to ambulate to the degree required by the Listing.

Listing 1.02, titled "Major dysfunction of a joint(s) (due to any cause)," is a multi-part Listing which, by its terms, is:

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  Specifically, when the joint in question is associated with the lower half of a claimant's body, a claimant must meet or equal Listing 1.02A, which requires the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."  *Id.*  Section 1.00(B)(2)(b), titled "What We Mean by Inability to Ambulate Effectively," further refines the analysis as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and

8

the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b).

Here, the ALJ explicitly considered Listing 1.02A and found that Claimant did not meet the Listing despite having the severe impairment of osteoarthritis of both hips. (R. 14.) In reaching this conclusion, first, the ALJ accurately laid out all of the Listing's requirements. (R. 15.) Then, the ALJ discussed the results of Dr. Fernandez' consultative examination, noting that Dr. Fernandez had found that Claimant could walk approximately 100 yards, stand 20-25 minutes, pick up 20-30 pounds, drive, use the bathroom, dress and feed himself, go shopping, walk without an assistive device (albeit with a stiff gait), stand and walk for 2-4 hours with frequent breaks, and sit 4-6 hours with regular to frequent breaks. *Id.* Importantly, in finding that Dr. Fernandez' opinion did not support a conclusion that Claimant met or equaled Listing 1.02, the ALJ noted that Dr. Fernandez' examination was performed on December 28, 2006, *almost two years* after Claimant's date last insured. *Id.*

The Court finds Claimant's contention that the ALJ improperly relied exclusively on the fact that Claimant was not using an assistive device to be without merit. To the contrary, the ALJ mentioned this fact as merely one of many, giving it no special emphasis. Furthermore, this fact was not, as Claimant suggests, the only fact considered by the ALJ which could contribute to an analysis under Section 100(B)(2)(b). For example, Claimant's ability to drive would support a finding that he was able to "travel without companion assistance" and his ability to go shopping is clearly mentioned as a factor to be considered. In addition, Claimant points to no evidence in the record that would tend to conclusively support a finding that he met or equaled Listing 1.02, and, though

Claimant contends that the ALJ failed to consider his pain complaints and/or Dr. Fernandez' opinion that he could stand and walk for at most four hours with frequent breaks, that is simply not the case. The ALJ explicitly mentioned Dr. Fernandez' opinion in his analysis of Claimant's ability to ambulate, an opinion that was formulated in part on the basis of Claimant's pain complaints. Furthermore, the Court also notes that, in attempting to explain how Claimant did in fact meet the criteria of Listing 1.02, Claimant has disingenuously set forth medical evidence to support elements of the Listing which derive from assessments of Claimant conducted well after his date last insured, despite the fact that whether Claimant would meet the Listing *now* is of no import.

Therefore, for the foregoing reasons, the Court finds that the ALJ accurately stated the law and correctly applied it to the facts of Claimant's case and that, therefore, his determination that Claimant did not meet or equal the criteria of Listing 1.02 because he did not have an inability to ambulate effectively was supported by substantial evidence. Accordingly, Claimant's argument that the ALJ erred by failing to find that he met or equaled Listing 1.02 is rejected.

> **B.** **Claimant's argument that the ALJ erred by failing to include in his RFC the fact that he requires frequent breaks, regardless of whether his job entails sitting or standing and walking.**

Claimant next argues that the ALJ erred by failing to include in his RFC the fact that he requires frequent breaks, regardless of whether his job entails sitting or standing and walking. To that end, Claimant contends that the ALJ mentioned his need for frequent breaks in his analysis of whether he met a Listing, but did not include this limitation in his articulation of his RFC, choosing instead to state that he required an at will sit/stand option. Claimant contends that the difference between "frequent breaks" and an "at will sit/stand option" is material because the former "entails

cessation of work for the length of the break" while the latter "assumes that work will continue" and that, therefore, an employer can accommodate an at will sit/stand option much more easily than a need for frequent breaks. In addition, Claimant contends that, in so doing, the ALJ improperly accepted Dr. Fernandez' assessment of his need for frequent breaks in his discussion of whether Claimant met a Listing and then discounted it in determining that his RFC only required an at will sit/stand option. Similarly, Claimant contends that the ALJ erred by not mentioning the need for frequent breaks in the hypothetical question posed to the VE.

In response, the Commissioner argues that the ALJ's assessment of Claimant's RFC was proper and that the ALJ did not err in failing to include the condition that Claimant required frequent breaks. In support of this, the Commissioner contends that, as a legal matter, the ALJ did not necessarily have to accept or reject Dr. Fernandez' opinion in order to acknowledge it in analyzing whether Claimant met a Listing. In addition, the Commissioner also argues that Dr. Fernandez' opinion is not, as Claimant argues, necessarily in conflict with the ALJ's assessment of Claimant's RFC because nothing in Dr. Fernandez' assessment suggests that an at will sit/stand option would not accommodate Claimant's need for frequent breaks.

At the outset, the Court notes that it agrees with the Commissioner's observation that "nothing in Dr. Fernandez's opinion suggests, as Mr. Marshall's counsel seems to believe is obvious, that the 'frequent breaks' referred to are not just breaks from standing and walking, i.e., the need to sit, albeit while working, for a time." Comm.'s Mem. in Supp. at 11 [DE-41]. In addition, the Court reiterates that Dr. Fernandez' assessment of Claimant as requiring frequent breaks was conducted *almost two years* after Claimant's date last insured and, therefore, the ALJ need not necessarily have considered it at all in determining Claimant's RFC as of his date last insured. However, in the

interest of addressing Claimant's argument in full, the Court will nonetheless briefly address the issue of whether the ALJ's determination that Claimant required only an at will sit/stand option was supported by substantial evidence.

Here, the ALJ found that: "the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except due to hip problems the claimant could work with a sit/stand option. . . . The claimant was able to walk, stand or sit 6 hours in an 8 hour workday, with the ability to sit or stand at his option. Otherwise, he has no visual, manipulative, communicative or environmental limitations, prior to December 31, 2004." (R. 15.) In making this assessment, the ALJ considered Claimant's November 2, 2004 x-ray at the NJDOC, which indicated advanced osteoarthritis of both hips. (R. 16.) He noted that, at that time, Claimant's gait "consisted of a limp and hip rocking motion," that Claimant took Motrin for pain, and that Claimant was restricted to a lower bunk bed. *Id.* The ALJ also observed that in December 2004, Claimant's records indicated that he had degenerative joint disease of the hips and had difficulty walking but did not use any ambulatory assistive devices. *Id.* In addition, the ALJ considered records dating from *after* Claimant's date last insured, noting that Claimant had "complained of dizziness while working at his assigned job in the kitchen in May 2005, where he had been medically cleared to work and stood while he worked," that in August 2005 he was standing 1-2 hours while at his food service job, and that in his pre-parole summary in 2006 he had no work restrictions.[2] *Id.*

The Court finds that the ALJ clearly considered and relied upon records, including several dating from *after* Claimant's date last insured, which supported his assessment of Claimant's RFC.

---

[2]Though the ALJ recognized that Claimant had testified that he did not work while in prison, the ALJ did not find this statement credible because "the prison records show[ed] that he was cleared for and worked in food service, standing one-to-two hours at a time." (R. 17.)

For example, the ALJ noted that Claimant was apparently cleared to work and did work in a job which required standing well after his date last insured. In fact, not only did the ALJ find that Claimant retained the RFC for light work with an at will sit/stand option prior to his date last insured, but it appears that the ALJ may have even believed that Claimant retained such an RFC two years after that date. Therefore, the Court concludes that the ALJ's determination that Claimant retained the RFC to perform light work with an at will sit/stand option was supported by substantial evidence.

Claimant also briefly argues that the hypothetical posed to the VE by the ALJ was flawed because it did not convey Claimant's need for frequent breaks to the VE. However, as discussed, Dr. Fernandez' opinion was rendered two years after Claimant's date last insured and, therefore, the ALJ was not required to include that limitation in the hypothetical posed to the VE. The hypothetical did, however, appropriately include the ALJ's assessment that Claimant required an at will sit/stand option, which the Court has already found to have been supported by substantial evidence. As a result, the hypothetical was proper.

Therefore, for the foregoing reasons, the Court finds that the ALJ accurately assessed Claimant's RFC and that substantial evidence supported his determination that Claimant required only an at will sit/stand option. Accordingly, Claimant's argument that the ALJ erred by failing to include in his RFC the fact that he requires frequent breaks, regardless of whether his job entails sitting or standing and walking, is rejected.

**C.** **Claimant's argument that the ALJ erred in finding that the jobs for which he had an RFC exist in significant numbers in the national economy.**

Claimant next argues that the ALJ erred in finding that the jobs for which he had an RFC exist in significant numbers in the national economy. To that end, he contends that Social Security Ruling ("SSR") 83-12 creates a rebuttable presumption that unskilled jobs which accommodate a sit/stand option do not exist in significant numbers in the national economy and that the Commissioner failed to overcome this presumption. In particular, Claimant contends that the VE should have testified as to how many cashier II jobs and small products assembler I and II jobs exist which accommodate a sit/stand option, and not how many exist in general. Therefore, Claimant argues that the Commissioner failed to meet the burden under step five to prove that there are jobs that exist in significant numbers in the national economy that Claimant could perform.

In response, the Commissioner argues that the ALJ sufficiently overcame any presumption created by SSR 83-12 by seeking out and relying upon the VE's testimony, given in response to a proper hypothetical, that there are jobs that exist in the national economy that Claimant could perform. Furthermore, the Commissioner points out that Claimant's contention that the VE did not testify to the number of jobs which accommodate a sit/stand option is in error because, since the ALJ's hypothetical as posed included such a requirement, any answer the VE gave was necessarily in conformity therewith. Furthermore, the Commissioner notes that the VE's assessment of specific jobs that existed that Claimant could perform was adequate, and that Claimant has not rebutted her expertise on that issue.

SSR 83-12 recognizes that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will," and that, as a result, "[i]n cases of unusual limitation

14

of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (1983). However, the Fourth Circuit has held that there is no contradiction between SSR 83-12's presumption that unskilled jobs do not ordinarily allow for an at will sit/stand option and an ALJ's finding that a claimant can perform a significant number of jobs in the national economy when "it is clear that the VE knew he was responding to the ALJ's instruction to provide for no prolonged walking and standing and allow for a sit/stand option at the claimant's discretion." *Walls*, 296 F.3d at 291.

Here, the ALJ explicitly posed a hypothetical to the VE which included the ALJ's belief that Claimant required a sit/stand option, by saying "I'd ask you to assume that he did have a sit/stand option, that that job would require – any jobs would require a sit/stand option." (R. 362.) The VE responded that *such a person* could perform light jobs such as cashier II, products assembler II, small products assembler I, and office helper, and that these four potential jobs were being performed by 250,000, 50,000, 150,000 and 150,000 people nationally, respectively, and 3,000, 1,000, 2,000, and 2,000 people in North Carolina, respectively. (R. 362-63.) The VE also indicated that the cashier job and the assembly jobs would allow for "essentially" an at will sit/stand option, while the office helper position would require one to be seated for approximately 20 minutes at a time before being able to stand and walk and then continue sitting. (R. 363.)

The Court finds that the ALJ clearly and unambiguously expressed Claimant's need for a sit/stand option to the VE, and that there is no indication in the record that the VE did not understand the question. As a result, the Court rejects Claimant's argument that the VE's indication of how many jobs were available was too generalized. Instead, the Court finds that the VE responded to the hypothetical with information and numbers appropriate for a person with the limitations outlined in

15

the hypothetical and that the ALJ did not err in relying on that response. In addition, the Court notes that Claimant has cited no case law in support of the proposition that the ALJ did not overcome the presumption created by SSR 83-12.

Therefore, for the foregoing reasons, the Court finds that the ALJ accurately assessed Claimant's RFC and communicated it to the VE, and that, based on the VE's observations, substantial evidence supported the ALJ's determination that there are jobs that exist in significant numbers in the national economy that Claimant could perform. Accordingly, Claimant's argument that the ALJ erred in finding that the jobs for which he had an RFC exist in significant numbers in the national economy is rejected.

### D. Claimant's argument that the ALJ erred in finding that he has the RFC for light work.

Claimant next argues that the ALJ erred in finding that he has the RFC for light work. To that end, he contends that there is no medical evidence to support a finding that Claimant can stand for 6 hours a day with a sit/stand option. In support of this argument, Claimant points to his agency-prepared Physical RFC Assessment, which stated that he could stand or walk only "at least 2 hours in an 8-hour workday," and argues that because this assessment is a measure of the most one can do, not the least, he is not able to do light work. In addition, Claimant points to Dr. Fernandez' opinion that Claimant could stand and walk for only 2-4 hours with frequent breaks. Therefore, Claimant argues that he was only able to perform sedentary work, not light work, and as a result, should have been found to be disabled.

In response, the Commissioner argues that the record as a whole supports the ALJ's RFC determination. For example, the Commissioner points to NJDOC records which indicated that

16

Claimant walked without an ambulatory assistive device, had normal gait and station and normal range of motion, could participate in an exercise program, and was working in a standing position. In addition, the Commissioner points to the fact that there were also records dating from after Claimant's date last insured which suggested that he could perform light work with a sit/stand option, including records which indicated that he was running on a treadmill and that he had visited the doctor without even mentioning his hip pain.

Here, in concluding that as of his date last insured Claimant had the RFC to perform light work with limitations, the ALJ found that Claimant had been able to "walk, stand or sit 6 hours in an 8 hour workday, with the ability to sit or stand at his option." (R. 15.) In so finding, the ALJ considered the NJDOC medical records, Claimant's record of work in prison, the agency-prepared Physical RFC Assessment prepared on January 11, 2007, and Dr. Fernandez' December 28, 2006 opinion. (R. 16-17.) Significantly, the ALJ noted Dr. Fernandez' opinion that, even *two years after* his date last insured, Claimant retained the ability to walk and stand 2-4 hours and sit 4-6 hours in an 8-hour workday. (R. 17.)

The Court finds that the record is replete with evidence that could have legitimately led the ALJ to the conclusion that Claimant retained the RFC to perform light work with limitations as of his date last insured and that the ALJ did in fact consider such evidence. In so finding, the Court rejects Claimant's argument that there is no medical evidence to support a finding that Claimant could stand for 6 hours a day with a sit/stand option, and notes that, in fact, in finding that Claimant required a sit/stand option, the ALJ recognized the fact that Claimant might not have been able to stand for a consecutive six hours in an 8-hour workday but that this limitation could be

17

accommodated. In addition, the Court notes that once again, Claimant disingenuously points to medical evidence dating from two years after his date last insured in support of his argument.

Therefore, for the foregoing reasons, the Court finds that the ALJ accurately assessed the available records and that substantial evidence supported his determination that Claimant retained the RFC to perform light work with limitations. Accordingly, Claimant's argument that the ALJ erred in finding that he has the RFC for light work is rejected.

### E. Claimant's argument that the ALJ erred in rejecting his pain testimony.

Finally, Claimant argues that the ALJ erred in rejecting his pain testimony. To that end, Claimant contends that the ALJ correctly found that Claimant had presented enough evidence to show that he had a medical condition which could reasonably be expected to produce the pain alleged in the amount and degree alleged, pursuant to step one of the analysis outlined in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), but erred in not crediting that testimony at step two of the *Craig* analysis. In particular, Claimant contends that, given the ALJ's positive finding at *Craig* step one, Claimant's pain testimony was *expected*, and that the ALJ did not give sufficient reasons for finding that Claimant did not have pain in the amount and degree which the objective evidence would expect at *Craig* step two. In addition, Claimant argues that the ALJ did not give Claimant's pain testimony the appropriate "great weight." To that end, Claimant contends that the ALJ improperly discounted his testimony because of a discrepancy about whether Claimant had or had not worked while in prison. Similarly, Claimant contends that the ALJ also improperly discounted his testimony because he had no treatment records prior to imprisonment and was treated with only over-the-counter medication for his pain.

18

In response, the Commissioner argues that merely because the ALJ found that Claimant had met *Craig* step one based on objective medical evidence that his pain complaints *could* be legitimate, that does not necessarily mandate that the ALJ had to accept that Claimant had "told the truth" insofar as to require a finding that Claimant had met *Craig* step two. To the contrary, the Commissioner argues that the ALJ appropriately weighed the evidence, of which Claimant's pain complaints were merely one piece, in finding that Claimant retained the RFC to do light work with limitations.

In assessing a claimant's credibility, an ALJ must follow the two step process outlined by the Fourth Circuit in *Craig v. Chater*. First, an ALJ must determine whether the claimant's medically determinable impairment(s) could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594-95. Second, an ALJ must evaluate the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Here, the ALJ clearly outlined both steps of the *Craig* analysis and considered them each in turn. At *Craig* step one, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms." (R. 16.) In so finding, the ALJ considered, for example, the fact that Claimant had been diagnosed with advanced osteoarthritis of both hips, that his gait consisted of a limp and hip rocking motion, and that he had difficulty with walking. *Id.* The ALJ also considered evidence of Claimant's pain dating from *after* his date last

19

insured, including Dr. Fernandez' December 28, 2006 opinion. *Id.* However, at *Craig* step two, the ALJ found that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the RFC assessment]," (R. 16), because, among other things, Claimant had testified that he had not worked while in prison despite prison records which indicated that he did, that he had not sought treatment for his hip pain until incarcerated, that he received only over-the-counter medications for his hip pain, and that he did not participate in any therapy while in prison (R. 17).

The Court finds that the ALJ did not err in not fully crediting Claimant's pain testimony at *Craig* step two. Claimant's apparent attempt to argue that a finding that a claimant has met *Craig* Step One necessarily leads to a finding that a claimant has met *Craig* step two is in direct conflict with the procedure clearly outlined in *Craig* itself. Furthermore, the Court finds that the ALJ appropriately considered both *Craig* steps and supported each of his findings with credible evidence from the record. In so finding, the Court notes that while the ALJ may have misinterpreted Claimant's statements about whether he did or did not work in prison, the fact remains that the prison records show that he did, and this in and of itself serves as support for the ALJ's conclusion that Claimant's pain complaints were not entirely credible. In addition, the Court rejects Claimant's argument that the ALJ improperly considered the fact that Claimant had no treatment records prior to imprisonment and was treated with only over-the-counter medication for his pain. The fact that Claimant's first documented doctor's visit for his hip pain occurred in the month before his date last insured was appropriately considered by the ALJ in assessing Claimant's pain complaints. Similarly, though over-the-counter medication may have been, as Claimant implies, the only option available to an inmate, the Court agrees with the Commissioner's observation that this does not diminish the

20

fact that records indicated that Claimant was able to work and/or engage in exercise at various times after the initial assessment and prescription.

Therefore, for the foregoing reasons, the Court finds that the ALJ applied the appropriate standard in evaluating Claimant's pain complaints and that substantial evidence supported his determination that Claimant's pain complaints were not fully credible. Accordingly, Claimant's argument that the ALJ erred in rejecting his pain testimony is rejected.


## CONCLUSION

The Court has considered all five of Claimant's arguments and rejected each of them in turn. In so doing, the Court has determined that the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and rationale. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. Therefore, the Court finds that substantial evidence supports the Commissioner's factual findings and that the ultimate decision that Claimant was not disabled was reached through the application of the correct legal standards. *See Walls*, 296 F.3d at 290.

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings [DE-34] be **DENIED** and that the Commissioner's motion for judgment on the pleadings [DE-40] be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain

error, from attacking on appeal the proposed factual findings and legal conclusions not objected to,

and accepted by, the District Court.


This the 31st day of January, 2012.

_____
DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE

22